**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **COAL RIVER ENERGY, LLC,** | |
| Plaintiff, | |
| v. | Civil Action No. 11-1648 (BJR) |
| **THE UNITED STATES DEPARTMENT OF THE INTERIOR and its Secretary, KENNETH SALAZAR,** | MEMORANDUM OPINION |
| Defendants. | |

## I. INTRODUCTION

This matter is before the Court upon consideration of Defendant's motion for judgment on the pleadings. In its motion, Defendant argues that the Court lacks jurisdiction under 30 U.S.C. § 1276(a)(1) to review Plaintiff Coal River's claims. The Court agrees that Plaintiff's claims must meet the requirements of § 1276(a)(1) and fail to do so. Accordingly, the Court **GRANTS** Defendant's motion for judgment on the pleadings.

## II. BACKGROUND

Congress passed the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), codified at 20 U.S.C. §§ 1232 *et seq.*, to, among other things, "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations," and "assure that adequate procedures are undertaken to reclaim surface areas as contemporaneously as possible with the surface coal mining operations." *See* 20 U.S.C. § 1232(a), (e). To that end, Congress imposed a fee on coal "operators," 30 U.S.C. § 1232(a), that would facilitate the "reclamation and restoration of land and water resources adversely affected

by past coal mining," *id.* § 1232(c)(1). This fee, which would go into an Abandoned Mine Land ("AML") fund, was calculated based upon the weight of "coal produced."[1] *Id.* § 1232(a).

The SMCRA does not, however, define the term "coal produced." This omission was of concern since the weight of coal fluctuates according to whether the coal is weighed at the time of extraction (at which time the coal's weight would include dirt, rocks, and other non-coal materials) or weighed at the time that the coal was ready for sale, transfer or use (after which the non-coal materials would presumably have been removed). Def.'s Mot. at 3; Pl.'s Opp'n at 11.

To resolve this issue, the Secretary of Interior, acting through the United States Department of Interior's Office of Surface Mining ("OSM"), promulgated 30 C.F.R. § 870.12 in December 1977. This regulation provided, in relevant part, that the coal operator would pay the AML fee on "each ton of coal produced for sale, transfer, or use," as determined "by the weight and value [of the coal] at the time of initial bona fide sale, transfer of ownership, or use by the operator." 30 C.F.R. § 870.12(a)-(b). OSM rejected a proposal that would have based the AML fee on the weight and value of the coal at the time it was extracted from the ground. 42 Fed. Reg. 44,956 (Sept. 7, 1977). In the early 1980s, OSM added language to 30 C.F.R. § 870.12 clarifying that the AML fee is to be determined by the weight and value of the coal at the time of the "first transaction or use of the coal by the operator immediately after it is severed, or removed from a reclaimed coal refuse deposit." 30 C.F.R. § 870.12(b)(1).

---

[1] Section 1232(a) states:

> All operators of coal mining operations subject to the provisions of [SMCRA] shall pay to the Secretary of the Interior, for deposit in the [AML] fund, a reclamation fee of 31.5 cents per ton of coal produced by surface coal mining and 13.5 cents per ton of coal produced by underground mining or 10 per centum of the value of the coal at the mine, as determined by the Secretary, whichever is less, except that the reclamation fee for lignite coal shall be at a rate of 2 per centum of the value of the coal at the mine, or 9 cents per ton, whichever is less.

Plaintiff Coal River Energy LLC is a West Virginia corporation formed in 2003 that produces and sells coal. Pl.'s Compl. ¶ 1. Since the second quarter of 2008, Plaintiff has sold coal for export and believes it will continue to do so in the future. *Id.* ¶ 4. Whenever Plaintiff has sold coal for export, it has had to pay the AML fee imposed by OSM. *Id.* ¶ 1.

In 2011, Plaintiff filed suit against the Department of the Interior and its Secretary (referred to collectively as "Defendant"). *See generally* Compl. Plaintiff claims that the imposition of the AML fee "on coal sold for export by Plaintiff," as authorized by 30 C.F.R. § 870.12(b), "violates the Export Clause of the United States Constitution, which prohibits any tax or duty on exports."[2] Compl. ¶¶ 1,7. Plaintiff asks that the Court declare unconstitutional Defendant's regulations insofar as they impose an AML fee on coal sold for export, and seeks an order enjoining the Department of the Interior and the Secretary from "further imposition, or enforcement of the imposition, of a tax on plaintiff's coal when sold for export." Compl., Prayer for Relief. Defendant moves for judgment on the pleadings, arguing that the Court lacks jurisdiction and must dismiss this matter. *See generally* Def.'s Mot. With that motion now ripe for consideration, the Court turns to consider the parties' legal arguments and the applicable legal standards.

### III. ANALYSIS

#### A. Legal Standard – Motion for Judgment on the Pleadings

A defendant may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." FED. R. CIV. P. 12(c). To succeed, a movant must demonstrate that "no material fact is in dispute and that it is entitled to judgment as a matter of law." *Peters v. Nat'l R.R. Passenger Corp.,* 966 F.2d 1483, 1485 (D.C. Cir. 1992). Furthermore, in resolving a motion for judgment on the pleadings, the Court must assume the

---

[2] The Export Clause provides that "[n]o Tax or duty shall be laid on Articles exported from any State." U.S. Const. art. I, § 9.

factual allegations in favor of the plaintiff. *Equal Rights Ctr. v. Post Props.*, 633 F.3d 1136, 1141 (D.C. Cir. 2011).

### B. The SMCRA Deprives the Court of Jurisdiction Over Plaintiff's Claims

### 1. The Jurisdictional Requirements of § 1276(a)(1) Apply to Plaintiff's Claims

#### a. The Requirements of § 1276(a)(1) Apply Once the Court is Asked to Invalidate OSM's Regulations

The SMCRA provides that:

> Any action by the Secretary promulgating national rules or regulations . . . shall be subject to judicial review in the United States District Court for the District of Columbia Circuit. . . . A petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action, or after such date if the petition is based solely on grounds arising after the sixtieth day. Any such petition may be made by any person who participated in the administrative proceedings and who is aggrieved by the action of the Secretary.

30 U.S.C. § 1276(a)(1).

Defendant argues the Court lacks jurisdiction to review Plaintiff's claims under the jurisdictional limitations imposed by § 1276(a)(1). Def.'s Mot. at 11-12. Plaintiff responds that § 1276(a)(1) only constrains judicial review of *facial* challenges, and therefore does not affect this Court's ability to entertain Plaintiff's claim, which attacks the constitutionality of OSM's regulations *as applied* to coal that is sold for export. Pl.'s Opp'n at 18-19.

Although the thrust of Plaintiff's arguments focus on whether its claims are an "as applied" rather than a "facial" challenge, the label here is unimportant. As demonstrated by the case law, the Court's inquiry more properly focuses on whether its resolution of Plaintiff's claim might require the Court to invalidate the regulations, either implicitly or explicitly. *See discussion infra*; *cf. Envt'l Defense v. Duke*, 549 U.S. 561 (2007) (holding that a court's "implicit validation" of the relevant regulations triggered the requirements of § 307(b) of the Clean Water Act which, like § 1276(a)(1), limits judicial review of challenges to the validity of a regulation).

4

In *United States v. Troup*, 821 F.2d 194 (3d 1987), the United States sought to recover AML fees owed by a coal operator that sold the raw coal product, *i.e.* coal mixed with rock and other debris, to a third party. In his defense, the coal operator argued that he should only be required to pay AML fees "on the weight of the coal after it ha[d] been cleaned" by the third party. Declining to exercise jurisdiction, the Third Circuit observed that the coal operator's defense struck at the heart of OSM's regulation, which provided that the AML fee would be calculated based on the coal's weight at the time of sale, notwithstanding any impurities that remained. According to the Third Circuit, the constraints to the court's jurisdiction found in SMCRA applied because this was "the type of challenge to national regulations contemplated by [§ 1276(a)(1)]." *Id.* at 198.

Other Courts have similarly held that the jurisdictional requirements of § 1276(a)(1) apply to any action that challenges the validity of the regulations promulgated under the SMCRA, regardless of whether the challenge is direct or indirect. In *Tug Valley v. Watt*, the Fourth Circuit acknowledged that the "characterization of [the] suit as an attack on [a] federal regulation" hinged on one's interpretation of the regulation at issue. 703 F.2d 796, 799 (4th Cir. 1983). Nevertheless, the Fourth Circuit concluded that the plaintiff had to satisfy the requirements of § 1276(a)(1) for judicial review because the claim was tantamount to an attack on a federal regulation. *Id.* at 800 (holding that the district court "had no jurisdiction to hear what amounted to an attack on [a] federal regulation"); *see also Virginia ex rel. Virginia Dep't of Conservation & Economic Dev. v. Watt*, 741 F.2d 37, 40-41 (4th Cir. 1984) ("attacks on administrative action, taken in accordance with the Secretary's regulations, amount to attacks on the regulations themselves" and even indirect attacks on a regulation must abide by the requirements for judicial review laid out in § 1276(a)(1)). Lastly, in *Amerikohl Mining, Inc. v. United States*, the Federal Circuit, affirmed a dismissal for lack of subject matter jurisdiction,

holding that "regardless of how [the coal producer] characterizes the present action, [it] is precluded from challenging the validity of regulations promulgated under section 1276(a)(1)" because it did not meet the requirements therein. 899 F.2d 1210, 1215 (Fed. Cir. 1990). Under these cases, if the Court finds that it is being asked to invalidate 30 C.F.R. § 870.12, then Plaintiff must meet the requirements in § 1276(a)(1) for this Court to have jurisdiction.[3]

### b. The Court's Resolution of Plaintiff's Claims May Invalidate 30 C.F.R. § 870.12

Defendant contends that Plaintiff "is plainly directly challenging the validity of the plain language of [30 C.F.R. § 870.12(a)-(b)] itself, not any alleged improper application or misinterpretation of the regulations." Def.'s Mot. at 12. Defendant further argues that "[t]he fact that [P]laintiff's challenge is of a constitutional nature does not alter the applicability of SMCRA's limitations period," as a constitutional challenge can render a regulation invalid. *Id.*

---

[3]   Plaintiff challenges the premise that the time restrictions of § 1276(a)(1) are jurisdictional in nature. Pl.'s Opp'n at 24-26. Although Plaintiff recognizes that "this Circuit has expressed the view that temporal limitations on judicial review are jurisdictional in nature," it urges the Court to reconsider whether *Irwin v. Dep't of Motor Vehicles*, 498 U.S. 89 (1990) altered the jurisdictional nature of § 1276(a)(1). In *Irwin*, the Supreme Court adopted a rule that a "rebuttable presumption of equitable tolling" should apply to suits against the United States, and specifically held that equitable tolling applied to the statute of limitations governing employment discrimination claims against the Government. 498 U.S. at 94-95. However, the Supreme Court has since clarified that *Irwin* does not, as a general matter, overrule prior cases in which the courts have declared a specific statute to be jurisdictional. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008) (rejecting the argument that *Irwin* changed the long-standing interpretation by the courts that the court of claims limitations statute is jurisdictional); *see also Marley v. United States*, 548 F.3d 1286, 1292-93 ("*Irwin* is not the correct rule when, as here, past precedents analyzing the specific statute at issue are available").

Since *Irwin*, the D.C. Circuit has interpreted § 1276(a)(1) as jurisdictional. *National Mining Association v. U.S. Dept. of the Interior*, 70 F.3d 1345 (D.C. Cir. 1995) (holding that the temporal requirements of § 1276(a)(1) are jurisdictional in nature); *see also Am. Road & Transp. Builders v. Envt'l Prot. Agency*, 588 F.3d 1109, 1113 (D.C. Cir. 2009) (dismissing suit brought under the Clean Air Act for lack of jurisdiction because judicial review was restricted by a temporal limitation provision similar to § 1276(a)(1) and relying on *National Mining* for support). Because *Irwin* is not controlling here and because Plaintiff provides nothing that would seriously call into question the D.C. Circuit's holding in *National Mining Association*, the Court treats the time restrictions of § 1276(a)(1) as jurisdictional. *See P&V Enters. V. United States Army Corps of Eng'rs*, 516 F.3d 1021 (D.C. Cir. 2008) (rejecting lower court's reasoning that *Irwin* and *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) made a "rebuttable presumption of equitable tolling" applicable to all lawsuits unless Congress had indicated otherwise).

at 15. On the other hand, Plaintiff insists that it is not challenging the validity of the regulation because 30 C.F.R. § 870.12 imposes a fee on all coal that is sold, whereas its claim seeks to prohibit the imposition of an AML fee on only coal that is sold in the stream of export. Pl.'s Opp'n at 18-21. Plaintiff further suggests that its claim should be categorized, not as one attacking the validity of the regulations, but rather as an action "challeng[ing] the unconstitutional application of the [AML] tax." *Id.* at 21-23.

Determining whether the resolution of Plaintiff's claims might lead to the invalidation of OSM's regulations would necessarily require that the Court delve into the merits of the case, a challenging task in light of the fact that the parties have not yet fully briefed the matter and a vexing position considering that the Court is resolving a threshold jurisdictional matter. *See* Ronald M. Levin, *Statutory Time Limits on Judicial Review of Rules: Verkuil Revisted*, 32 Cardozo L. Rev. 2203, 2228-29 (2011) ("In a number of cases, judges have stated that a time limit statute appears to foreclose them from reaching the merits of an argument that a rule exceeds the agency's authority - but then they have gone on to decide the merits of that argument anyway. This is a curious way of treating a threshold issue that courts often describe as jurisdictional."). Fortunately, the Court finds sufficient guidance in the parties' arguments, as well as the prior analysis by the D.C. Circuit, the Court of Federal Claims and the Federal Circuit in dealing with legal issues substantively similar to those raised by Plaintiff. Thus, the Court turns to review those cases, each of which dealt with interpreting the term "coal produced" under the SMCRA.

In *Drummond Coal v. Hodel*, a coal operator brought suit challenging a regulation that allowed the Secretary to impose the AML fee by calculating the gross weight of coal prior to sale, thereby "including impurities such as water that had not been removed prior to sale." 796 F.2d 503-04 (D.C. Cir. 1986). The coal operator did not believe that the Secretary could impose

a fee on the excess moisture in coal attributable to post-excavation rainfall or washing. *Id.* at 504. The D.C. Circuit disagreed. As noted earlier, the SMCRA authorizes that an AML fee be imposed on "coal produced." 30 U.S.C. § 1232(a); *see also supra* Part II. The D.C. Circuit found that the term "coal produced" was ambiguous, as "'[p]roduction' could reasonably be interpreted to include the entire process of extracting and selling coal, complete from pit to buyer's door, or it could refer solely to the process of extraction." *Drummond*, 796 F.2d at 505. In light of this ambiguity, the D.C. Circuit deferred to the Secretary's regulations which had reasonable construed the phrase "coal produced" to include both the extraction and sale of coal. *Id.* at 505.

The *Drummond* opinion was relied on heavily by the Court of Federal Claims in *Consolidated Coal Co. v. United States*, 64 Fed. Cl. 718, 727 (Fed. Cl. 2005). In *Consolidated Coal*, numerous coal operators argued that the AML fee violated the Export Clause because it was "a tax impermissibly levied on the sale of coal after it has entered the stream of export" – the same claim presented by Plaintiff to this Court.[4] *Consolidated Coal Co. v. United States*, 64 Fed. Cl. 718, 719-20 (Fed. Cl. 2005). The Court of Federal Claims explained that it had to "initially discern the precise moment the reclamation fee is imposed," as "the fee would be constitutional if imposed solely on [coal during the] extraction [stage]" but might be unconstitutional "if imposed at the time the coal is sold." *Id.* at 20-21. Again, because the SMCRA states that the AML fee is imposed on the amount of "coal produced," the Court of Federal Claims was required to interpret the phrase "coal produced" in order to determine whether the AML fee is imposed at the time of extraction or sale. *Id.*; *see also supra* Part II.

---

[4] These courts considered the merits of the constitutional claim only after the Federal Circuit determined that jurisdiction was proper under the Tucker Act – a source of jurisdiction not available here. *See Auction Co. of Am. v. FDIC*, 132 F.3d 746, 749 (D.C. Cir. 1997) (explaining that the Tucker Act gives jurisdiction exclusively to the Court of Federal Claims and the Federal Circuit for suits against the United States where the plaintiff seeks over $ 10,000 in relief).

Ultimately, the Court of Federal Claims determined that the AML fee "is imposed upon the sale of coal and burdens that event" because "[t]he term 'coal produced' extends beyond mere extraction and includes the entire process of extracting and selling coal." *Consolidated Coal*, 64 Fed. Cl. at 728 (internal quotation and citation omitted).

On appeal, the Federal Circuit reversed the decision by the Court of Federal Claims. *See Consolidated Coal Co. v. United States*, 528 F.3d 1344 (Fed. Cir. 2008). The Federal Circuit noted that neither the SMCRA nor the regulations defined "coal produced," and that the term was ambiguous.[5] Like the Court of Federal Claims, the Federal Circuit observed:

> If "coal produced" in § 1232(a) refers solely to coal extracted then the disputed portion of the statute does not render the statute unconstitutional under the Export Clause. If, however, "coal produced" is interpreted to include the entire process of extracting and selling coal--if it is a tax on extraction *and* sale--then, as it applies to sales that occur in the export process, it is an unconstitutional violation of the Export Clause.

*Id.* at 1346. According to the Federal Circuit, because the term "coal produced" in the SMCRA could reasonably be interpreted to mean "coal extracted," this interpretation must be adopted to preserve the constitutionality of the SMCRA. *Id.* at 1347-48.

On remand, the coal operators argued that the Federal Circuit had neglected to consider the constitutionality of the implementing regulations, focusing instead solely on the construction of the term "coal produced" in the SMCRA and the constitutionality of that statute. *Consolidated Coal Co. v. United States*, 615 F.3d 1378, 1380 (Fed. Cir. 2010). When the matter was appealed yet again, the Federal Circuit specifically held that the doctrine of constitutional avoidance requires that the term "coal produced" as used in the regulations must be interpreted to mean "coal extracted" rather than "coal sold," and therefore the regulations do not violate the Export Clause. *Id.* at 1382.

---

[5] The Federal Circuit further recognized that under 30 C.F.R. § 870.12, coal operators paid an AML fee on "coal produced" and that fee was levied by determining the weight and value of the coal at the time of sale, transfer or use.

To succeed in its claim, Plaintiff must persuade this Court that the Federal Circuit erred in *Consolidated Coal* and that the doctrine of constitutional avoidance does not properly apply here. Under the doctrine of constitutional avoidance, a court must construe ambiguous statutory language to avoid serious constitutional doubts, "if it is readily susceptible to such a construction." *United States v. Stevens*, 130 S. Ct. 1577, 1592 (2008); *see also Dep't of Air Force v. Fed. Labor Relations Authority*, 952 F.2d 446, 452 (D.C. Cir. 1991) (applying the statutory rule for constitutional avoidance to regulations). To prevail, Plaintiff has to convince this Court that under § 870.12(a)-(b) the term "coal produced" is unambiguous and not susceptible to being construed as "coal extracted." Plaintiff believes it can persuade the Court that "coal produced" unambiguously means the entire process of extracting and selling coal by pointing to the D.C. Circuit's ruling in *Drummond* as well as OSM's long-standing practice of imposing the AML fee at the time of sale. Pl.'s Opp'n at 13-14, 18.

Under Plaintiff's reasoning, if Plaintiff were to persuade the Court that under § 870.12, "coal produced" unambiguously means the entire process of extracting and selling coal, then the Court would have to hold that the regulation is unconstitutional as applied to coal that is sold for export. Assuming that the Court agrees that the Export Clause requires such a result, the regulation would then have to be struck down as overly broad and unconstitutional.[6] Thus,

---

[6] Plaintiff suggests that the Court could rule that the regulation is constitutional as applied to domestic sales but unconstitutional as applied to export sales, but the Court cannot rewrite an unambiguous regulation to conform it to constitutional requirements. *Stevens*, 130 S. Ct. at 1592 (noting that a court cannot rewrite an overly broad law to render its unambiguous language constitutional because that "would constitute a serious invasion of the legislative domain and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place"); *Commodity Futures Trading Comm'n. v. Schor*, 478 U.S. 833, 841 (1986) (noting that the court does not have "prerogative to ignore the legislative will . . . so as to save [a statute] against constitutional attack, it must not and will not carry this [canon of construction] to the point of perverting the pulse of a statute or judicially rewriting it"); *Dep't of Air Force v. Fed. Labor Relations Authority*, 952 F.2d at 452 (explaining that a court should only construe a regulation to avoid constitutional questions when the regulation is ambiguous, but "[w]hen a rule (or a statute) is clear, a court cannot distort its meaning to avoid constitutional or statutory conflict" because "it is the executive, not the judiciary, which wields rulemaking power under our constitutional

Plaintiff's only path to a victorious lawsuit requires the invalidation of 30 C.F.R. § 870.12(a)-(b). Once the validity of the regulation is in question, the jurisdictional strictures of § 1276(a)(1) must apply. *See supra* Part III.B.1.a. Accordingly, § 1276(a)(1) applies to Plaintiff's claims.

**2. Plaintiff's Claim is Based on Grounds "Arising After" the 60-day Limitations Period**

As noted above, 30 U.S.C. § 1276(a)(1) requires a petitioner to seek review of a contested regulation 60 days from the date of its promulgation "or after such date if the petition is based solely on grounds arising after the sixtieth day."[7] Neither party contends that Plaintiff filed its complaint within 60 days of the promulgation of 30 C.F.R. § 870.12. Indeed, the regulatory provisions at stake were promulgated in 1977 and Plaintiff filed its complaint in 2011, significantly beyond the 60-day limitation. *See* 42 Fed. Reg. 62,713-62,716. Moreover, despite Plaintiff's suggestion to the contrary, the 60-day limitation is not subject to equitable tolling due to the jurisdictional nature of § 1276. *John R. Sand & Gravel Co. v. United States*, 552 U.S. at 133 (explaining that courts applying a jurisdictional statute of limitations are "forbid[den] . . . to consider whether certain equitable considerations warrant extending a limitations period"); *see also supra* Part III.B.1.b, n.3 (rejecting Plaintiff's argument that § 1276 is not jurisdictional).

Plaintiff's claim may still survive, however, if its complaint is "based solely on grounds arising after" February 1978 -- approximately 60 days after the regulation's promulgation. Plaintiff argues that its complaint falls into this exception because Plaintiff, having been established as a company in 2004, did not exist in 1978, and only began selling coal for export in

---

regime and must be held accountable for it. Courts cannot rewrite regulations at will to avoid conflicts with underlying statutes.").

[7] Section 1276(a)(1) also states that "Any such petition may be made by any person who participated in the administrative proceedings and who is aggrieved by the action of the Secretary." 30 U.S.C. § 1276(a)(1). Defendant argues that Plaintiff's Complaint should be dismissed because Plaintiff did not participate in the notice and comment period of rulemaking for the contested regulation. The Court need not reach this argument because, as set forth below, it finds that Plaintiff Complaint should be dismissed for untimeliness.

2008. Pl.'s Opp'n at 23-24. Defendant argues that the "arising after" exception does not apply because Plaintiff's claim was foreseeable at the time that Congress passed the regulation.[8] According to Defendant, Congress must have understood that new coal operators would enter the industry after the promulgation of the regulations and also understood that some portion of the coal sold might be exported. Def.'s Mot. at 13-14. Defendant further contends that Plaintiff's lack of standing at the time the regulation was published is insufficient reason to apply the "arising after" exception. *Id.* at 14. To hold otherwise, Defendant asserts, would too easily allow the circumvention of Congress's intent to limit review of SMCRA regulations. Def.'s Reply at 5.

As an initial observation, this Circuit has underscored that "Congress in § 1276(a)(1) struck a careful balance between the need for administrative finality and the need to provide for subsequent review in the event of unexpected difficulties. Permitting review of [a plaintiff's] petition based on grounds clearly available within 60 days of the rule's promulgation would thwart Congress' well-laid plan." *National Mining Ass'n v. Dep't of Interior*, 70 F.3d 1345, 1350 (D.C. Cir. 1995). This Court is mindful that it must not interpret § 1276(a)(1) in a way that "would make a mockery of Congress' careful effort to force potential litigants to bring challenges to a rule issued under [the SMCRA] at the outset unless they can meet the after-arising test." *Id.* at 1350-51. Thus, it is with a critical eye that the Court turns to what is meant by "arising after."

---

[8] Plaintiff maintains that the "arising after" exception of § 1276 should not be limited to only "unforeseen circumstances," but rather should be treated instead as the express incorporation of the equitable tolling doctrine to § 1276. Pl.'s Opp'n at 23-26. Plaintiff's bases this argument on its view that under *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-95 (1990), courts should no longer view § 1276 as jurisdictional. *Id.* Because the Court has already rejected Plaintiff's argument that *Irwin* changed the jurisdictional nature of § 1276, *see supra* Part III.B.1.b, n.3, it similarly rejects Plaintiff's argument here that the "arising after" exception should be interpreted as Congress's intent to allow for equitable tolling under § 1276.

12

While the D.C. Circuit has not opined specifically on what constitutes an "arising after" event under the SMCRA, it has interpreted the phrase "arising after" in the context of other environmental statutes that similarly limit jurisdiction. *See e.g., Am. Rd. & Transp. Builders v. Envt'l Prot. Agency* ("*Am. Rd. I*"), 588 F.3d 1109, 1113-16 (D.C. Cir. 2009) (referring to case law interpreting § 1276(a)(1) to decide whether jurisdiction was proper under the Clean Air Act); *National Mining Ass'n v. Dep't of Interior*, 70 F.3d at 1350 n.2 (observing that the limitations on judicial review found in § 1276(a)(1) are similar to the limitations on judicial review found in other environmental statutes and listing those statutes).

In interpreting the "arising after" exception found in § 307(b) of the Clean Air Act, the D.C. Circuit has held that "the occurrence of an event that ripens a claim constitutes an after-arising ground." *Am. Road & Transp. Builders v. Envt'l Prot. Agency ("Am. Rd. II")*, No. 11-1256, 2013 U.S. App. LEXIS 910, at *10 (D.C. Cir. Jan. 15, 2013) (citing *Am. Rd. & Transp. Builders v. Envt'l Prot. Agency* ("*Am. Rd. I*"), 588 F.3d 1109, 1113-16 (D.C. Cir. 2009)). The mere application of a regulation, however, is not sufficient to constitute an "arising after" ground and trigger a new statute of limitations period. *Id.* at *12-13. Nor does the fact that the same legal arguments could have been raised against a regulation at the time of promulgation foreclose the possibility that a court may review the petition under the "arising after" exception. *Coal. For Responsible Reg., Inc. v. Envt'l Prot. Agency*, 684 F.3d 102, 129 (D.C. Cir. 2012) (holding that the "arising after" exception of the Clean Air Act applied notwithstanding that the petition for review was based on legal arguments that were available during the original 60-day review periods for the regulations). This is because "[d]uring an initial [60-day] review period [of a regulation], although purely legal claims may be justiciable and, thus, prudentially ripe, a party without an immediate or threatened injury lacks a constitutionally ripe claim." *Id.*

"Ripeness, while often spoken of as a justiciability doctrine distinct from standing, in fact shares the constitutional requirement of standing that an injury in fact be certainly impending." *Id.* (quoting *Nat'l Treasury Emp. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996)). "Constitutional ripeness exists where a challenge "involves, at least in part, the existence of a live 'Case or Controversy.'" *Id.* "Standing to challenge agency action exists where a petitioner can demonstrate an 'injury in fact' that is fairly traceable to the challenged action and is likely to be redressed by a favorable judicial decision." *Id.*

The D.C. Circuit has "assured petitioners with unripe claims that they will not be foreclosed from judicial review when the appropriate time comes, and that they need not fear preclusion by reason of the 60-day stipulation barring judicial review." *Id.* (internal quotations and citations omitted). Although "allowing [petitioners] to litigate their newly ripened claims [may] have far-reaching implications for finality of agency actions, . . . 'the ripeness doctrine reflects a judgment that the disadvantages of a premature review that may prove too abstract or unnecessary ordinarily outweigh the additional costs of – even repetitive – litigation.'" *Id.* (quoting *Ohio Forestry Ass'n, Inc.* v. Sierra Club, 523 U.S. 726, 735 (1998) (alterations omitted)).

As Plaintiff was not established as a company until 2003, it lacked standing during the 60-day review period after the regulation's promulgation. Moreover, Plaintiff could not have demonstrated an "injury in fact" traceable to the alleged constitutional infirmity of 30 C.F.R. § 870.12 until it began exporting coal in 2008. Thus, Plaintiff's claim was not ripe until at least 2008-2009 – at whatever point Plaintiff owed or paid the AML fees for the coal that it sold for export in 2008. Accordingly, Plaintiff's claim properly fits into the "arising after" exception found in § 1276(a)(1).

### 3. Plaintiff's Claim is Untimely

Plaintiff contends that once it is deemed to fall within the "arising after" exception, it is no longer limited by the 60 day requirement, rather the six-year statute of limitations found in 28 U.S.C. § 2401(a) applies.  Defendant argues that Plaintiff should have challenged the regulation within 60 days from when the new grounds arose, *i.e.* 60 days from the date that Plaintiff first paid its AML fees for the coal that it sold for export.  Def.'s Reply at 6.  Defendant contends that "if a party must challenge an initial rulemaking within 60 days of promulgation, it is untenable to suggest that a party has six years to challenge the rule after the occurrence of an event arising more than 60 days after the promulgation." *Id.*

As Defendant notes, this Court has previously held that the initial 60-day statute of limitations provided in § 1276(a)(1) reasserts itself to apply to any action filed pursuant to the "arising after" exception. *Nat'l Mining Ass'n v. Office of Hearings & Appeals*, 777 F. Supp. 2d 164, 173 (D.D.C. 2011).  Indeed, it makes little sense to restrict the initial challenges to the regulations to 60 days while allowing petitions based on later arising grounds to be filed within six years of the ripening of their claims.  Requiring a petitioner to make a challenge within 60 days of the later arising event is in line with Congress's intent to strike a "careful balance between the need for administrative finality and the need to provide for subsequent review in the event of unexpected difficulties." *National Mining Ass'n v. Dep't of Interior*, 70 F.3d at 1350.

Here, Plaintiff's claim ripened when its AML fees for coal exported first became due or were paid, presumably sometime in 2009.  Yet Plaintiff waited approximately two years to file its complaint.  Because Plaintiff failed to filed its complaint within 60 days of its ripened claim, the Court dismisses Plaintiff's claim for lack of jurisdiction under § 1276.[9]

---

[9] Plaintiff claims that the Administrative Procedure Act ("APA") is an independent source of jurisdiction, notwithstanding failure to comply with § 1276(a)(1).  However, "agency actions are not reviewable under [the APA] if other 'statutes preclude judicial review.'" *Patent Office Prof'l Ass'n v. Federal Labor Rels. Auth.*, 128 F.3d 751, 753 (D.C. Cir. 1997) (citing 5 U.S.C. §

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings.  This matter is **DISMISSED** for lack of jurisdiction under 30 U.S.C. § 1276.

**SO ORDERED.**

March 20, 2013

*Barbara J. Rothstein*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

---

701(a)(1)).  Because § 1276(a)(1) bars review of Plaintiff's untimely claim, the APA cannot provide this Court with a source of jurisdiction to review Plaintiff's complaint.